IN THE CHANCERY COURT OF JONES COUNTY, MISSISSIPPI
SECOND JUDICIAL DISTRICT, LAUREL DIVISION

EDWARD MORGAN AND OTHER    *
PLAINTIFFS IDENTIFIED IN    *
EXHIBIT "A" ATTACHED HERETO    *
AND INCORPORATED FULLY    *
HEREIN    *
   *
Plaintiffs,    *
   *
vs.    *      CIVIL ACTION NO. CV 2002-1029
   *
AMERICAN INTERNATIONAL GROUP, INC; *
AMERICAN GENERAL CORPORATION;    *
AMERICAN GENERAL FINANCE, INC.;    *
AMERICAN GENERAL FINANCE, INC.,    *
OF MISSISSIPPI; CREDIT CENTERS, INC.,    *
D/B/A AMERICAN GENERAL FINANCE INC.; *
MERIT LIFE INSURANCE COMPANY;    *
YOSEMITE INSURANCE COMPANY; and    *
Defendants "A", "B", and "C",    *
whether singular or plural, those other    *
persons, corporations, firms, or other    *
entities whose wrongful conduct caused    *
the injuries and damages to the Plaintiff,    *
all of whose true and correct names are    *
unknown to Plaintiffs at this time, but will    *
be substituted by amendment when ascertained, *
   *
Defendants.    *



EXHIBIT

6

---

## COMPLAINT

COME NOW THE PLAINTIFFS, by and through their attorneys, and bring this Civil

Complaint against Defendants and the other Defendants named in Exhibit B (hereinafter "Defendant

Agents"); and in support of their cause of action, show the following:

### VENUE AND JURISDICTION

FILED

NOV 0 8 2002
2.10 PM
WAYNE MYRICK
CHANCERY CLERK
JONES COUNTY, MISS

1. Venue is proper in the Circuit Court of Jones County, pursuant to §11-11-7, *Mississippi Code of* 1972 Ann., since service on Defendants Merit Life Insurance Company and Yosemite Life Insurance Company is being made on George Dale, Insurance Commissioner for the State of Mississippi. This cause of action accrued at least in part, within Jones County, Mississippi. This Court has jurisdiction over the parties because some or all of the plaintiffs live in Jones County and all or part of the actions complained of herein occurred in Jones County.

2. Plaintiffs' claims are brought solely under Mississippi law, and Plaintiffs state that they do not bring any claims pursuant to any federal laws, statutes, or regulations. Plaintiffs do not bring any claims for violation of 15 U.S.C. § 1601 et. seq., i.e., the "Truth in Lending Act." No Plaintiffs are currently in bankruptcy.

3. All named Defendants are hereinafter referred to collectively as "Defendants."

4. Defendants are liable for the wrongful conduct alleged herein.

5. There may be other entities whose true names and identities are unknown to Plaintiffs at this time who may be legally responsible for the claim(s) set forth herein who may be added by amendment by the Plaintiffs when their true names and identities are accurately ascertained by further discovery. Until that time, the Plaintiffs will designate these parties in accordance with Rule 9(b) of the Mississippi Rules of Civil Procedure. The word "entity" as used herein is intended to refer to and include all legal entities, including individual persons, any and all forms of partnerships, and any and all types of corporations and unincorporated associations. The symbol by which these party defendants are designated is intended to include more than one entity in the event that discovery reveals that the descriptive characterization of the symbol applies to more than one

2

"entity." Defendants as set out in the complaint, refers not only to named Defendants but also to fictitious party Defendants.

6.   PLAINTIFFS MAKE NO CLAIMS PURSUANT TO FEDERAL LAW AND FURTHER MAKE NO CLAIMS WHICH WOULD GIVE RISE TO ANY FEDERAL CAUSE OF ACTION. PLAINTIFFS' CLAIMS ARE BASED SOLELY UPON STATE LAW.   EACH PLAINTIFF MAKES A CLAIM FOR COMPENSATORY DAMAGES. EACH PLAINTIFF SEEKS NO MORE THAN $74,900 IN TOTAL RECOVERY, BOTH EQUITABLE AND LEGAL, INCLUDING ANY FEES, COSTS, AND INTEREST.   EVEN IF EACH PLAINTIFF WERE TO RECOVER UNDER EACH COUNT OF THE COMPLAINT, EACH PLAINTIFF'S DAMAGES WOULD NOT EXCEED $74,900 IN THE AGGREGATE.   FURTHERMORE, THE VALUE OF ALL RELIEF FOR EACH PLAINTIFF SOUGHT DOES NOT EXCEED $74,900 IN THE AGGREGATE.

## BACKGROUND FACTS

7.   This is a lawsuit brought on behalf of the Plaintiffs, who have or have had loans or who co-signed or guaranteed loans with Defendants and who were charged for credit life, credit disability, personal property and/or other insurance products and fees by any or all of the Defendants.

8.   Plaintiffs each executed a loan with Defendants and purchased credit life, credit disability and/or personal property insurance.   An agent and/or employee of the Defendants closed the loans and sold Plaintiffs the credit life, credit disability and/or personal property insurance while acting as an agent for the named Defendants and/or the fictitious Defendants.   Said Defendants are therefore liable for the actions and/or inactions set out herein.

3

9. Until within the past three (3) years, Plaintiffs were unaware of the Defendants' wrongful conduct as alleged herein and could not have at any time earlier discovered Defendants' wrongful conduct, which included Defendants' affirmative and fraudulent concealment of their wrongful conduct and the facts relating thereto.

10. Contrary to law, Defendants required credit life insurance, credit disability, personal property insurance and/or other insurance in connection with their loans to Plaintiffs. These insurance products were represented by Defendants as a necessary part of the loan package, with all or some of these insurance products misrepresented by Defendants as a necessary prerequisite for the extension of the credit and receipt of the loan. These insurance products, however, are unnecessary as a matter of law. The premiums for Defendants' insurance products were excessive and/or inflated in comparison to other similar insurance products available in the marketplace but not sold or offered by Defendants. Additionally, insurance premiums were inflated falsely due to undisclosed commissions that Defendants received for selling the insurance. In fact, Defendants' employees' compensation and bonuses are tied to the amount of insurance sold. Defendants typically also sold insurance based upon "total of payments" as opposed to the amount financed. This conduct is in violation of law.

11. Defendants sold and packaged these insurance products to Plaintiffs for two primary undisclosed financial reasons: (a) the premiums for insurance coverage can be financed and more finance charges charged to the borrower and (b) to profit from undisclosed and concealed commissions and fees paid for selling the insurance. Defendants required Plaintiffs to purchase credit life, credit disability, personal property insurance and/or other insurance from insurance companies related to or affiliated with Defendants and/or with which Defendants are in joint venture.

4

These "insurers" paid commissions and other consideration to the Defendants. The Defendants did not disclose this secret arrangement to Plaintiffs.

12. Defendants engaged in "insurance packing" by increasing Plaintiffs' debt by "padding" or "packing" the amount financed through the sale of insurance products. Exorbitant interest rates were then charged by Defendants on the amount financed, which includes the insurance products.

13. Credit insurance was calculated by the Defendants on the total of payments, which increases the premium charged to the Plaintiffs, which in turn, further bloats the loans. Defendants did not disclose these facts to the Plaintiffs.

14. Because interest and credit insurance premiums are time-sensitive components of the cost of credit, the Defendants stretch the loan term as long as possible to the detriment of the Plaintiffs. The problem is exacerbated by the nature of discount interest. Discount interest is deducted in advance, so the longer the term, the greater the amount deducted, and the higher the effective yield to the Defendants. These facts are not disclosed to Plaintiffs.

15. Excessively high and/or false points, closing costs, origination fees, service charges and/or other fees are also charged by Defendants in order to bloat the loans. Defendants did not explain or disclose the true nature of these junk fees to the Plaintiff. These hidden costs to the borrower were not disclosed or explained by Defendants.

16. Credit insurance, for the most part, is unnecessary and overpriced. The price the Plaintiffs paid for this insurance goes for additional profits to the Defendants, rather than for the protection of the Plaintiff. Defendants did not explain or disclose this information to the Plaintiffs.

17. Loading of hidden profits to Defendants into the costs of credit insurance is detrimental to Plaintiffs. The credit insurance sold to Plaintiffs is substantially more expensive than the same or similar insurance the Plaintiffs could purchase elsewhere.

18. Defendants did not explain or disclose this information to the Plaintiffs.

19. "Insurance packing" refers to increasing Plaintiffs' debt by padding or "packing" the amount financed through the sale of expensive, unnecessary, and often unwanted products, primarily insurance. One of the more subtle mechanisms by which insurance packing is imposed by Defendants is to stretch a loan's term, since the cost of the premiums increases with the term of the loan. Insurance packing has provided Defendants with excessive finance charges and/or other compensation and is unlawful and "unconscionable". Defendants did not explain or disclose this information to the Plaintiffs.

20. Defendants also padded the amounts financed in order to increase the loan beyond the maximum small loan size and charged higher interest rates. Defendants charged late fees in violation of Miss. Code Ann. § 75-17-27 and further charged excessive interest and finance charges in direct violation of Miss. Code Ann. § 75-17-21. Defendants did not explain or disclose this information to the Plaintiffs.

21. Mississippi law restricts the right of creditors to take non-purchase money security interest in household goods. Ordinary household goods have little genuine value as security - yet Defendants have taken such goods for leverage in debt collection and to provide an excuse for writing property insurance on such goods. Defendants coerced Plaintiffs into purchasing credit property insurance even when as a matter of law Defendants cannot take a security interest in the household goods "protected" by the insurance, Defendants had no intention of repossessing such

6

household goods and the Defendants inflated the "value" of the collateral in order to charge a higher premium. This information was not disclosed or explained to Plaintiffs.

22. Defendants also forced some Plaintiffs to buy property insurance on collateral that already was insured by existing homeowner's or renter's policies. Defendants did not explain or disclose this information to the Plaintiffs.

23. Defendants, through the artifice of other "fees" or "insurance" charges, have set up a secret default reserve. This is fraudulent in that (a) Defendants already have preference over other creditors as to the household goods designated as "collateral"; and (b) Defendants have required purchase of the "insured" products. Defendants did not explain or disclose this information to the Plaintiffs.

24. Defendants have sold credit insurance to Plaintiffs who are ineligible for the insurance coverage under the very terms of the policies that they were required to buy. Unlike ordinary insurance sales, Defendants conduct no risk analysis or underwriting and they do not ask for information relating to eligibility for benefits under credit insurance policies, such as medical histories. Instead, only after a claim is filed are eligibility factors such as health, age, and employment checked to see if grounds exist for denying coverage. Such abhorrent conduct is often referred to as "reverse underwriting." Many policies simply provide that the policy will be canceled and the premium refunded if ineligibility is determined. The result of this arrangement is that Defendants earned interest on the premiums paid by ineligible borrowers who never file an insurance claim, while refusing to pay on the same policies if claims are ever filed. These facts were fraudulently concealed from and not disclosed to Plaintiffs. Defendants' credit life policies have age restrictions, and pre-existing condition exclusions. Defendants' credit disability policies have

7

exclusionary periods whereby they will not pay for disabilities traceable to pre-existing conditions which occur within the first six months of coverage. Furthermore, many disability policies require that the customer be employed at the time the insurance is purchased. Moreover, none of the policies' provisions were disclosed to Plaintiffs, who typically never even receive an insurance policy. Defendants conduct little, if any, training of their sales staff in the area of insurance. In sum, the insurance itself is often worthless. Defendants did not explain or disclose this information to the Plaintiffs.

25. Defendants fraudulently induced Plaintiffs to buy insurance to protect against unforeseen loss of income (accident and health or involuntary unemployment), yet most Plaintiffs' ability to repay will not be jeopardized by such loss because they are on a fixed income, such as Social Security or AFDC. There is no benefit to such a borrower as most disability policies have some form of "actively at work" clause which excludes people with a non wage income from benefits. Such sales are a pretext for usury under Mississippi law, because the insurance provides no benefit to borrowers and because of numerous other reasons. The sole benefit is to the Defendants. These facts were not disclosed to the Plaintiffs.

26. The Plaintiffs obtained loans through Defendants. Plaintiffs' loans were packed with credit life insurance, credit disability insurance, credit property insurance and junk fees. The Plaintiffs have had this insurance forced upon them by Defendants under the above circumstances. The Plaintiffs were victims of the above-described wrongful and fraudulent practices.

27. Defendants also engaged in the wrongful practice of "loan flipping".

28. Defendants would solicit existing customers to refinance their existing loans at a time when it was financially beneficial to Defendants and financially detrimental to the customers. When

8

the customer's loan was "flipped", the customer would pay excessive and unnecessary loan fees and higher interest charges on the new loan. Furthermore, the addition of credit insurance further created excessive charges for the customers, especially due to the operation of the Rule of 78's. Customers were not allowed to have a separate loan. These facts were not disclosed to Plaintiffs.

29. The Defendants concealed and withheld the information material to the causes of action set out in this Complaint. In addition to making the conscious choice to conceal the material information, the Defendants created and implemented policies and procedures for conducting their ongoing business in a manner that would ensure concealment of their wrongdoing. The Defendants all took affirmative steps to conceal from the Plaintiffs the wrongful acts and omissions perpetuated against the Plaintiffs. The Defendants' conduct in this regard constitutes fraudulent concealment.

30. Defendants' conduct constitutes a breach of contract, breach of implied covenants of good faith and fair dealing, breach of fiduciary duties, civil conspiracy, negligence, fraudulent misrepresentation and/or omission, negligent misrepresentation and/or omission. The Defendants' conduct also warrants equitable relief in the form of restitution and injunctive relief with respect to the credit insurance premiums and interest on such premiums only.

## COUNT I

### Breach of Fiduciary Duties

31. Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

32. Defendants purported to obtain credit life, credit disability and/or credit property insurance on behalf of Plaintiffs. Defendants owed a fiduciary duty to Plaintiffs to obtain adequate insurance at a fair and reasonable price and to disclose to Plaintiffs facts which worked to the

9

Plaintiffs financial detriment. Under these circumstances, the relationship between the parties transcended a normal lender/borrower relationship. This fiduciary duty or confidential relationship arose because the Plaintiffs placed special trust and confidence in their lender to obtain adequate insurance for the purposes contemplated at the prevailing market rate and to advise Plaintiffs of facts which worked to the financial detriment of Plaintiffs.

33. Defendants had a duty to act in the best interests of the Plaintiffs, or at least not to act in a manner which was directly adverse to the interests of the Plaintiffs.

34. Defendants, including the employees of the Defendants, had an affirmative duty to disclose to the Plaintiffs that the Defendants directly or indirectly received re-numeration for the insurance programs and to refrain from representing to the Plaintiffs that all of the premiums collected were being paid to a disinterested insurance company. Defendants had an affirmative duty to disclose to Plaintiffs that the Defendants derive substantial income through the sale of insurance and had a financial incentive to sell insurance in connection with loans to borrowers. The disclosure form failed to disclose adequately Defendants' sharing of the insurance premiums and the financial connection between Defendants and the insurers. Defendants also had a duty to disclose the other facts described herein.

35. Defendants breached their fiduciary duties owed to Plaintiffs by marketing, selling and obtaining credit life, credit disability and credit property insurance on Plaintiffs' property which was inadequate, grossly overpriced, and far in excess of the prevailing market rate, and based upon "total of payments."

36. Defendants also breached their fiduciary duties owed to Plaintiffs by charging Plaintiffs interest on the inadequate and grossly overpriced insurance premiums at the Contract rate.

10

Defendants further breached their fiduciary duties by failing to disclose to Plaintiffs that is was not financially in the Plaintiffs' best interest to refinance their existing loans. Defendants should have informed Plaintiffs that it would cost Plaintiffs less money if Plaintiffs took out another loan, instead of refinancing the existing loan.

37. Defendants breached their fiduciary duties owed to Plaintiffs by among other things charging premiums for non-existent, useless, overpriced or worthless insurance coverage.

38. Defendants' breach of their fiduciary duties caused Plaintiffs to suffer damages in an amount to be determined at trial.

39. Additionally, by reason of the Defendants' conduct set out herein, Plaintiffs are entitled to recover compensatory damages.

## COUNT II

### Breach of Implied Covenants of Good Faith and Fair Dealing

40. Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

41. In every contract, there are implied covenants of good faith and fair dealing. These implied covenants prevent one party from exercising judgment in such a manner as to evade the spirit of the transaction or to deny the other party the expected benefits of the contract.

42. When Plaintiffs entered into their contract with Defendants for a consumer loan, they reasonably believed that if Defendants procured credit life, credit disability and credit property insurance on their behalf, Defendants would procure adequate insurance at the prevailing market rate and not grossly overcharge Plaintiffs for such insurance. Additionally, Plaintiffs reasonably believed and had the right to believe, that if Defendants obtained credit life, credit disability, and credit

11

property insurance for them, an exorbitant interest rate would not be charged for the insurance premium.

43. However, the Defendants breached the implied covenants of good faith and fair dealing by evading the spirit of the transaction by obtaining inadequate insurance for Plaintiffs and charging an exorbitant and grossly unfair premium which was far in excess of the market rate.

44. Moreover, by engaging in the misleading and deceptive practices described herein, including "loan flipping", the Defendants have successfully taken advantage of the Plaintiffs' lack of knowledge and sophistication regarding the entire transactions as well as the insurance described herein.

45. Defendants further breached the implied covenants of Good Faith and Fair Dealing by engaging in the conduct set out in the Background Facts portion of the Complaint.

46. As a direct and proximate result of Defendants' breach of the implied covenants of good faith and fair dealing, Plaintiffs have been damaged in an amount to be proven at the trial.

47. Defendants' misleading and deceptive practices thereby entitles the Plaintiffs to recovery of compensatory damages.

## COUNT III

### Fraudulent Misrepresentation and/or Omission

48. Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

49. Defendants made the above-described and the following false, misleading and deceptive representations to Plaintiffs and/or failed to state material facts in connection with the obtaining of

credit life, credit disability and credit property insurance on behalf of Plaintiffs, in the following respects.

(a)     At the time Defendants obtained credit life, credit disability and credit property insurance on behalf of the Plaintiffs, Defendants failed to inform Plaintiffs that they could obtain alternative credit life, credit disability and/or credit property insurance at a cost much less than the amount that would be charged for insurance procured by Defendants;

(b)     Defendants failed to advise Plaintiffs that the credit life, credit disability and/or credit property insurance charged to Plaintiffs was grossly overpriced and far in excess of the market rate, and based upon "total of payments";

(c)     Defendants failed to inform Plaintiffs that the insurance premiums for the credit life, credit disability, and/or credit property insurance furnished by Defendants would be financed at an excessive interest rate, thereby further driving up the cost of the insurance obtained for Plaintiffs;

(d)     Defendants failed to advise Plaintiffs that the credit life, credit disability and/or credit property insurance purportedly obtained on their behalf was wholly inadequate;

(e)     Defendants failed to disclose to Plaintiffs that Defendants would financially benefit and share either directly or indirectly in the insurance premiums charged to Plaintiffs, and that Defendants and/or its agents and representatives had a pecuniary interest in selling Plaintiffs credit life, credit disability and/or credit property insurance;

13

(f)   Defendants failed to disclose and adequately explain to Plaintiffs the manner in which credit life, credit disability and credit property insurance would be procured and charged to Plaintiffs;

(g)   Defendants failed to disclose to Plaintiffs that they were not required to purchase the credit life, credit disability and/or credit property insurance;

(h)   Defendants, including the employees of the Defendants, misrepresented to Plaintiffs that they were required to purchase the credit life, credit disability and/or credit property insurance;

(i)   Defendants failed to disclose that Plaintiffs were paying higher costs, including more interest and higher fees, as a result of the refinancing or "flipping" of existing loans;

(j)   Defendants led Plaintiffs to believe that it would cost Plaintiffs less money by refinancing their existing loans;

(k)   Defendants failed to disclose to Plaintiffs that the credit property insurance premiums were excessive, that Defendants were taking a security interest in consumer goods which were not allowed by law, and that Defendants had no intention of repossessing any of the listed consumer goods, and

(l)   Defendants further failed to disclose the other facts set out in the Background Facts section of the Complaint.

50.  The fraudulent misrepresentations, omissions and concealment by Defendants were known and deliberate and were purposely designed to deceive Plaintiffs into believing that Defendants were obtaining and furnishing adequate credit life, credit disability and/or credit property

14

insurance for them at a fair price, and that there was no need for Plaintiffs to take any further action, and that Plaintiffs were being treated fairly and in accordance with the law.

51. At the time the Defendants obtained credit life, credit disability and/or credit property insurance on behalf of Plaintiffs, Plaintiffs were unaware of the facts set out above.

52. The misrepresentations, concealment and omissions by Defendants, were material in that Plaintiffs would not have permitted Defendants to obtain credit life, credit disability and/or credit property insurance on their behalf nor would Plaintiffs have completed the transaction absent the deceptive and misleading statements and omissions of material facts by Defendants. Plaintiffs reasonably believed that Defendants had accurately and adequately disclosed all material facts and acted in their best interests.

53. As a direct and proximate result of Defendants' fraudulent misrepresentations, concealment and omissions, Plaintiffs have been proximately damaged.

54. Defendants' fraudulent conduct was unlawful, thereby entitling Plaintiffs to the recovery of compensatory damages from Defendants.

COUNT IV

<u>Negligent Misrepresentation and/or Omission</u>

55. Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege.

56. Defendants negligently failed to advise Plaintiffs that Defendants are engaged in insurance underwriting through affiliated insurance companies; that they receive "commissions" or "compensation" for certain insurance programs underwritten by other companies; and/or that they derive substantial revenue from the sale of insurance to loan customers. Defendants negligently

15

represented and/or negligently failed to advise of the manner in which Defendants obtained credit life insurance, credit disability and/or credit property insurance for Plaintiffs, as well as other material facts as more fully described herein, specifically in Count 3 above and the Background Facts portion of the complaint. Defendants negligently represented and/or negligently failed to disclose to its borrowers the information set out in Count 3 above and the Background Facts portion of the Complaint, as well as in the other parts of the Complaint.

57. The representations and omissions made by Defendants were false and/or misleading and were negligently or recklessly made by Defendants without regard for their truth or falsity.

58. Defendants made these representations and/or omissions to Plaintiffs intending that they rely upon such representations and/or omissions.

59. At the time the negligent misrepresentations and omissions were made, Plaintiffs believed they were true and were ignorant of the falsity of the representations. Therefore, Plaintiffs had the right to rely upon, and did reasonable rely upon the representations and/or omissions.

60. The negligent representations were material in that they induced Plaintiffs to enter into the loan transactions and to allow Defendants to provide credit life, credit disability and/or credit property insurance on their behalf and to pay inflated premiums and other interest charges related thereto.

61. As a consequence of the negligent misrepresentations and omissions, Plaintiffs have incurred actual and compensatory damages in an amount to be proven at trial.

62. Defendants' negligent misrepresentations and/or omissions were reckless and were made with complete disregard for the benefit of Plaintiffs, thereby entitling Plaintiffs to the recovery of compensatory damages against Defendants.

16

## COUNT V

### Civil Conspiracy

63. Plaintiffs adopt and incorporate herein by reference all preceding paragraphs and further allege:

64. Defendants entered into a civil conspiracy with each other to sell credit life, credit disability and/or credit property insurance to Plaintiffs that were unnecessary and at an exorbitant premium far in excess of the market rate, as set out in other areas of the Complaint. Said Defendants further conspired to achieve the other alleged wrongs set out in the complaint.

65. As a direct and proximate result of the unlawful conspiracies, Plaintiffs have been damaged in an amount to be proven at trial.

66. The acts, omissions and other conduct of Defendants alleged herein were unlawful. Thus, Plaintiffs are entitled to recover compensatory damages from Defendants.

## COUNT VI

### Negligence

67. Plaintiffs hereby adopt and incorporate herein by reference all preceding paragraphs and further allege:

68. Defendants owed a duty to Plaintiffs to exercise reasonable care to ensure that Plaintiffs received credit life, credit disability and/or credit property insurance which was both adequate and fairly priced.

69. Defendants breached their duty of reasonable care to Plaintiffs by the following acts and/or omissions:

17

(a)     Failing to obtain credit life, credit disability and/or credit property insurance which was adequate and by obtaining insurance based upon "total of payments";

(b)     Failing to obtain credit life, credit disability and/or credit property insurance at the prevailing market rate;

(c)     Charging Plaintiffs excessive interest and other charges relating to the credit life, credit disability and/or credit property insurance;

(d)     Pre-computing the cost of the insurance premiums for the entire loan, charging the note for the entire premium, and charging interest for premiums not yet accrued;

(e)     Failing to furnish Plaintiffs with insurance policies which were for a definite period, which were signed and dated; and

(f)     Engaging in the other alleged wrongs and misconduct as set out in the Complaint.

70. As a direct and proximate result of the Defendants' breach of the duty of reasonable care, Plaintiffs have suffered damages in an amount to be proven at trial.

71. At all times relevant hereto, Defendants' conduct was unlawful.

72. Accordingly, Plaintiffs are entitled to recover compensatory damages.

## COUNT VII

### Restitution

73. Plaintiffs adopt and incorporate herein by reference each of the preceding paragraphs.

74. Plaintiffs seek a judgment from the Court ordering the Defendants to pay restitution of all amounts paid by each of the Plaintiffs for the credit insurance premiums and interest thereon as described throughout this complaint

18

75. WHEREFORE, PREMISES CONSIDERED, each Plaintiff respectfully requests that this Honorable Court order the equitable relief of restitution as to each of the Plaintiffs, in an amount to not exceed $74,900.00 when aggregated with all other recovery sought by each Plaintiff.

## COUNT VIII

### Injunctive Relief

76. Plaintiffs adopt and incorporate herein by reference each of the preceding paragraphs.

77. Plaintiffs are entitled to and hereby request the issuance of an injunction prohibiting the defendants from collecting from the Plaintiffs premiums for the credit insurance as described throughout this complaint and/or from collecting from the Plaintiffs interest charged on the credit insurance premiums.

78. WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Honorable Court issue an injunction prohibiting the future collection from the Plaintiffs of monies related to the credit insurance included on the Plaintiffs' loans.

## DAMAGES

79. Plaintiffs adopt and incorporate herein by reference each of the preceding paragraphs and further allege:

80. As to all Counts hereinabove, and as a proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered economic losses, emotional distress, mental anguish, physical pain and suffering, and other damages. As to all Counts and claims, Plaintiffs limit their damages as set out herein.

## PRAYER FOR RELIEF

19

*Plaintiffs demand judgment and relief in Plaintiffs' favor of, from and against the defendants for all damages and remedies in an amount of no greater than $74,900.00 each, in the aggregate. Each Plaintiff limits the amount of recovery sought as to all claims, both in equity and at law, and as otherwise set out herein.*

20

Respectfully submitted, this the 7th day of November, 2002

Roman A. Shaul (MS Bar No. 99873)
Attorney for Plaintiffs

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103
Telephone (334) 269-2343
Fax (334) 954-7555

Eugene M. Harlow (MS Bar No. 3086)
Attorney for Plaintiffs

OF COUNSEL:

GIBBES, GRAVES, MULLINS, HORTMAN,
HARLOW, MARTINDALE & JONES, PLLC
414 West Oak Street
Post Office Drawer 1409
Laurel, MS 39441
Telephone (601) 649-8611
Fax (601) 649-6062

## JURY DEMAND

PLAINTIFFS HEREBY DEMAND TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

21

Roman A. Shaul (MS Bar No. 99873)
Attorney for Plaintiffs

22